### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

**Holding a Criminal Term**
**Grand Jury Sworn in on May 7, 2019**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Criminal No. 19-** |
| | : | |
| **v.** | : | **Grand Jury Original** |
| | : | |
| **SHAUN MILLER** | : | |
| | : | **18 U.S.C. § 371 (Conspiracy);** |
| **and** | : | **18 U.S.C. § 1341 (Mail Fraud);** |
| | : | **18 U.S.C. § 1957 (Monetary Transactions of** |
| **THOMAS RANDOLPH,** | : | **Criminally Derived Property);** |
| | : | **18 U.S.C. § 2 (Aiding and Abetting and** |
| | : | **Causing an Act to be Done).** |
| **Defendants.** | : | |
| | : | **Criminal Forfeiture:** |
| | : | **18 U.S.C. §§ 981(a)(1)(C), 981(a)(1),** |
| | : | **and 982(b)(1);** |
| | : | **28 U.S.C. § 2461(c), and** |
| | : | **21 U.S.C. § 853(p).** |

### I N D I C T M E N T

The Grand Jury charges that:

### Background

At all times material to this Indictment:

1.     Private lenders (collectively referred to as "the lenders" and individually as "Lender 1" and "Lender 2") were in the business of loaning money to real estate investors who primarily bought distressed properties in order to rehabilitate, and then resell, the properties at a profit.  In order to assess the risk of the loan, the lenders required the borrower, or the one guaranteeing the repayment of the loan, to provide proof of assets, in the form of filed IRS Form 1040 Tax Returns and/or bank statements of accounts showing sufficient available cash to fund the buyer's down-payment ("cash from borrower") due at settlement and rehabilitation costs.  If the lenders were

1

assured that the loan would be repaid and there were sufficient funds for settlement and renovation, then they loaned the money for the real estate purchase. Typically, the lenders charged a higher rate of interest than mortgage companies or banks, and the loans were intended to be shorter in duration than typical home-owner mortgages.

2. If the lender approved the loan, then the borrower proceeded toward settlement, which was a process handled by a title and escrow company ("settlement company"). The settlement company prepared, and the lender reviewed, the preliminary Settlement Statement (an accounting of money funding the transaction and the disbursements from the transaction). Once approved, the lender provided the settlement company with instructions on how to secure its interest in the loan and transferred the loan proceeds to the settlement company for disbursements consistent with the Settlement Statement in order to assure, among other things, that the borrower had a financial stake in the property. At settlement, the parties to the transaction and the settlement agent signed the Settlement Statement certifying that the borrower provided the "cash from borrower" as stated, the sales price listed was the price negotiated between the parties, and the distributions were for legitimate debts of the seller.

3. After closing, the settlement company submitted the Deed (transferring the ownership of the property), Deed of Trust (promise to pay the loan and public notice that the property was encumbered with a mortgage loan), and any other filings to the District of Columbia's Recorder of Deeds (if the property were in the District of Columbia), with instructions that the Recorder of Deeds officially record the documents in the public records and then mail to the lender or settlement company the stamped recorded documents as proof that the documents were filed as required by the lender.

2

4.    Settlement Company 1 was a settlement company located in the District of Columbia.

5.    Settlement Company 2 was a settlement company located in Maryland.

6.    The defendant SHAUN MILLER ("Defendant MILLER") was a loan broker who coordinated loans for real estate investors from private lenders, and at times operated under the name "MES Property Holding LLC" or "MES Holdings."

7.    The defendant THOMAS RANDOLPH ("Defendant RANDOLPH") was a settlement agent for Settlement Company 1.

8.    Co-conspirator Marlon Meade ("Meade") held himself out as an investor who purchased and renovated real estate properties in the District of Columbia.

9.    Person A was a Certified Public Accountant who prepared income tax returns.

### COUNT ONE
### (Conspiracy)

10.    Paragraphs 1 through 9 are hereby realleged as if fully set forth herein.

### The Conspiracy

11.    From at least in or about October 2014, and continuing thereafter through at least in or about June 2015, in the District of Columbia and elsewhere, defendants SHAUN MILLER and THOMAS RANDOLPH (collectively "the defendants") did unlawfully, willfully, and knowingly conspire, combine, confederate, and agree with Meade, and other persons both known and unknown to the grand jury to commit offenses against the United States, that is:

a.    mail fraud, by engaging in a scheme to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing and attempting to execute the scheme to defraud, knowingly caused to be delivered mail matter, in violation of 18 U.S.C. § 1341;

3

b.      monetary transactions of criminally derived property, by engaging in transactions, by, through, and to financial institutions, affecting interstate commerce using criminally derived property of a value greater than $10,000, which was derived from a specified unlawful activity, that is, mail fraud (18 U.S.C. § 1341), in violation of 18 U.S.C. § 1957.

### Goal of the Conspiracy

12.     It was a goal of the conspiracy that the conspirators would use materially false and fraudulent documents and statements in order to obtain real estate property loans that they knew they would not obtain if they provided truthful information, and take lender proceeds to enrich themselves and to fund the real estate purchases.

### Manner and Means

It was a part of the conspiracy that:

13.     Defendant MILLER and others submitted inflated Personal Financial Statements, altered bank account statements, and false IRS Form 1040 Tax Returns to the lenders in an attempt to trick the lenders into loaning more than $5.6 million in loans for the purchase of real estate properties in the District of Columbia.

14.     Using false statements and forged documents, the conspirators and others obtained lender funding, and attempted to obtain lender funding, on properties located in the District of Columbia, including those listed below:

| Property Address | Date (in or about) | Amount of Loan | Primary Lender | Borrower(s) / Guarantor(s) | Title and Escrow Company |
|---|---|---|---|---|---|
| 1017 17th St, NE Washington, DC | October 2014 | $612,000 | Lender 1 | B.A. | Settlement Company 1 |
| 608 Girard St, NE Washington, DC | October 2014 | $1,160,000 | Lender 1 | Meade (borrower) C.T. | Attempt |

4

| | | | | (co-borrower) | |
|---|---|---|---|---|---|
| 1541 9th St, NW Washington, DC | December 2014 | $925,000 | Lender 1 | Meade | Settlement Company 1 |
| 1541 9th St, NW Washington, DC (second sale) | June 2015 | $1,050,000 | Lender 2 | J.C. | Settlement Company 1 |
| 2005 and 2009 M St, NE Washington, DC | February 2015 | $1,440,000 | Lender 1 | Meade (borrower) P.D. (guarantor) | Attempt |
| 2019 M St, NE Washington, DC | February 2015 | $445,000 | Lender 2 | Meade (borrower) C.T. (guarantor) | Settlement Company 2 |
| 5539 Bass Pl, SE Washington, DC | April 2015 | $80,000 | Lender 1 | J.C. | Attempt |

15.     Defendant MILLER and others falsely inflated the sales prices for the properties to obtain excess lender funds in order to recycle the lenders' own money as the borrowers' down-payment and to siphon off funds for their own enrichment.

16.     The conspirators and others generally failed to repay the loans, and the properties fell into foreclosure for a loss to the lenders.

**Overt Acts**

In furtherance of the conspiracy and to effect the object thereof, the defendants, along with other members of the conspiracy, committed the following overt acts, among others, on or about the dates listed below in the District of Columbia and elsewhere:

**1017 17th Street, NE**

17.     On October 14, 2014, Defendant MILLER, on behalf of borrower B.A., emailed

5

Lender 1 requesting a loan of $612,000 for the purchase of 1017 17th Street, NE, Washington, D.C. ("1017 17th Street, NE").

18.     On October 14, 2014, in response to Lender 1's request for filed IRS Form 1040 Tax Returns, bank statements, and paystubs, Defendant MILLER emailed Lender 1 a Personal Financial Statement, under B.A.'s name, falsely representing that B.A. maintained a cash balance of $455,000 in Navy Federal Credit Union and $340,000 in M&T Bank, and an altered Navy Federal Credit Union statement falsely showing a total account balance of $462,000.20, when in truth B.A.'s balance for the same time period at Navy Federal Credit Union was $5.20 and B.A. did not maintain any account at M&T Bank.

19.     On October 15, 2014, Defendant MILLER emailed Lender 1 IRS Form 1040 Tax Returns prepared by Person A, which falsely represented B.A.'s income.

20.     On October 20, 2014, in the District of Columbia, Defendant RANDOLPH participated in the settlement for 1017 17th Street, NE, after receiving the loan proceeds of $612,000 from Lender 1 on behalf of borrower B.A., using $227,803.96 of the lender's money to fund the buyer's down-payment, and sending $6,120 to Defendant MILLER as a "broker's fee," $19,713 to a bank account controlled by Defendant MILLER, and $114,391.04 to Meade or his creditors, and keeping $5,695 for himself and others.

21.     Between October 22, 2014, and October 28, 2014, in the District of Columbia, Settlement Company 1 caused an executed Deed of Trust to be filed at the District of Columbia's Recorder of Deeds, with instructions that after the recordation of the deed the Recorder of Deeds should mail the stamped documents back to Settlement Company 1.

22.     On October 28, 2014, in the District of Columbia and elsewhere, the District of Columbia's Recorder of Deeds mailed the file-stamped copy of the Deed of Trust, referenced

6

above, to Settlement Company 1.

### 608 Girard Street, NE (Attempt)

23.     On October 28, 2014, Meade emailed Defendant MILLER M&T Bank statements that falsely showed Meade with an account balance of more than $630,000, when in truth Meade held no bank account with M&T Bank.  That same day, Defendant MILLER sent these false M&T Bank statements to Lender 1 with a loan request for Meade to borrow $1,160,000 for the purchase of 608 Girard Street, NE, Washington, D.C. ("608 Girard Street, NE").

24.     On October 28, 2014, Defendant MILLER emailed Lender 1 copies of IRS Form 1040 Tax Returns prepared by Person A, falsely representing Meade's income.

25.     On November 3, 2014, Defendant MILLER emailed Lender 1 explaining that the "Girard deal" included a co-borrower, identified here as "C.T."

26.     On November 4, 2014, Meade emailed Defendant MILLER a Navy Federal Credit Union statement for C.T., which falsely showed a total account balance of $286,010.13, when in truth C.T. held no account at Navy Federal Credit Union.  Later that same day, Meade emailed to Defendant MILLER another version of the same account statement under the email subject line of "USE THIS ONE," and later sent another email attaching a third version with the subject line "Here you go – This is the real final."  Defendant MILLER then emailed Lender 1 with the third version of the account statement.

### 1541 9th Street, NW

27.     While the 608 Girard Street, NE, loan request was pending, Meade emailed Lender 1 seeking a loan, to be guaranteed by C.T., for the purchase of 1541 9th Street, NW, Washington, D.C. ("1541 9th Street, NW").

28.     On December 15, 2014, in the District of Columbia, Defendant RANDOLPH settled the transaction for 1541 9th Street, NW, after receiving the loan proceeds of $925,000 from Lender 1, using $406,789.75 of the lender's money to fund the buyer's down-payment, sending $20,500 to Defendant MILLER as a "broker's fee" and $53,473.52 to Meade or his creditors, and keeping $10,250 for himself and others.

29.     Between December 15, 2014, and December 31, 2014, in the District of Columbia, Settlement Company 1 caused an executed Deed of Trust to be filed at the District of Columbia's Recorder of Deeds, with instructions that after the recordation of the deed the Recorder of Deeds should mail the stamped documents back to Settlement Company 1.

30.     On December 31, 2014, in the District of Columbia and elsewhere, the District of Columbia's Recorder of Deeds mailed the file-stamped copy of the Deed, referenced above, to Settlement Company 1.

### 1541 9th Street, NW (second sale)

31.     On April 21, 2015, Defendant MILLER emailed an agent of Lender 2 seeking a loan for an individual identified here as J.C., falsely representing that J.C. held "over $500K [$500,000] in the bank" and made "$300K [$300,000] last year," after Defendant MILLER and Meade convinced J.C. to purchase 1541 9th Street, NW, for $200,000 more than Meade paid to buy the property three months earlier.

32.     On May 20, 2015, Meade sent Defendant MILLER an email with the subject line "Statements for 1941 9th Street;" the attachments consisted of account statements from Navy Federal Credit Union, which falsely showed that J.C. had a total account balance of approximately $500,000, when in truth J.C.'s balance at Navy Federal Credit Union ranged between $20 and $700.

8

33.     On June 11, 2015, in the District of Columbia, Settlement Company 1 and Defendant RANDOLPH participated in the settlement of the transaction for 1541 9th Street, NW, after receiving the loan proceeds of $1,050,000 from Lender 2 on behalf of borrower J.C., through his company, paying off the previous loan Meade obtained from Lender 1 (referenced in paragraph 28 above), using $237,812.67 of Lender 2's money to fund the buyer's down-payment, sending $134,011.48 to a bank account controlled by Defendant MILLER and $83,169.62 to Meade or his creditors, and keeping $6,600 for himself and others.

34.     Between June 11, 2015, and June 16, 2015, in the District of Columbia, Settlement Company 1 caused an executed Deed of Trust to be filed at the District of Columbia's Recorder of Deeds, with instructions that after the recordation of the deed the Recorder of Deeds should mail the stamped documents to Lender 2.

35.     On June 16, 2015, in the District of Columbia and elsewhere, the District of Columbia's Recorder of Deeds mailed the file-stamped copy of the Deed of Trust, referenced above, to the lender, Lender 2.

### 2005 and 2009 M Street, NE (Attempt)

36.     On February 18, 2015, Defendant MILLER emailed Lender 1 requesting a loan for Meade and an individual identified here as P.D. to purchase 2005 and 2009 M Street, NE, Washington, DC ("2005/2009 M Street, NE") for $1.6 million.  Defendant MILLER attached to the email an altered Navy Federal Credit Union statement, which falsely showed that P.D. held an account balance of more than $604,000, when in truth P.D.'s balance for the same time period at Navy Federal Credit Union was $18.  Defendant MILLER also attached 2013 and 2014 IRS Form 1040 Tax Returns prepared by Person A, which falsely represented P.D.'s income.

**5539 Bass Place, SE (Attempt)**

37.     On April 17, 2015, Defendant MILLER emailed Lender 1 requesting a loan for an individual identified here as "J.C." to purchase 5539 Bass Place, SE, Washington, DC ("5539 Bass Place, SE") for $80,000.  Defendant MILLER attached to the email a 2014 IRS Form 1040 Tax Return prepared by Person A, which falsely represented J.C.'s income.

**(Conspiracy to Commit Mail Fraud and
Monetary Transactions of Criminally Derived Property, in violation of
Title 18, United States Code, §§ 371, 1341, and 1957).**

**COUNTS TWO - FOUR**
**(Mail Fraud)**

38.     From in or about October 2014 to in or about June 2015, in the District of Columbia and elsewhere, Defendants SHAUN MILLER and THOMAS RANDOLPH, with the intent to defraud, devised and willfully participated in, with knowledge of its fraudulent nature, a scheme to defraud and to obtain money and property by materially false and fraudulent pretenses, representations, and promises, as more fully described below.

39.     Paragraphs 1 through 10 and 13 through 37 of Count One of this indictment are hereby realleged and contain the description of the above-mentioned scheme.

40.     On or about the dates listed below, in the District of Columbia and elsewhere, for the purpose of executing and attempting to execute the above-described scheme to defraud, Defendants SHAUN MILLER and THOMAS RANDOLPH knowingly caused to be delivered by the United States Postal Service and by a private and commercial interstate carrier, from the District of Columbia's Recorder of Deeds, located in the District of Columbia, mail matter, that is, file-stamped deeds of trust promising to repay loans obtained by the borrowers/guarantors listed below, for the properties listed below, all being in the District of Columbia:

10

| COUNT | DATE | PROPERTY | BORROWER / GUARANTOR | RECIPIENT |
|-------|------|----------|----------------------|-----------|
| TWO | 10/28/2014 | 1017 17th Street, NE | B.A. | Settlement Company 1 |
| THREE | 12/31/2014 | 1541 9th Street, NW | Meade | Settlement Company 1 |
| FOUR | 6/16/2015 | 1541 9th Street, NW | J.C. | Lender 2 |

**(Mail Fraud, in violation of Title 18,
United States Code, § 1341).**

**COUNTS FIVE – SEVEN**
**(Monetary Transactions of Criminally Derived Property)**

41.     The Grand Jury re-alleges and incorporates by reference the allegations of paragraphs 1 through 10, and 13 through 37 of Count One of this indictment as if fully set forth herein.

42.     On or about the dates listed below, in the District of Columbia and elsewhere, the defendants SHAUN MILLER and THOMAS RANDOLPH did knowingly engage and attempt to engage in monetary transactions by, through, and to a financial institution, and affecting interstate commerce, in criminally derived property of a value greater than $10,000 and that was derived from a specified unlawful activity, specifically Mail Fraud, in violation of 18 U.S.C. § 1341, that is, transactions in the amounts described below using loan proceeds for the properties listed below, through Settlement Company 1 to the recipients listed below, each transaction greater than $10,000 in criminally derived property:

11

| Count | On or About Date of Transaction | Amount | Loan Proceeds (Lender / Property) | Recipients |
|-------|------------------|----------|-----------------------------------|------------|
| FIVE | 10/22/2014 | $19,713 | 1017 17th Street, NE | Account controlled by Defendant MILLER |
| SIX | 12/17/2014 | $20,500 | 1541 9th Street, NW | MES Property Holding(s) LLC (Defendant MILLER) |
| SEVEN | 6/15/2015 | $134,011.48 | 1541 9th Street, NW | Account controlled by Defendant MILLER |

**(Monetary Transactions of Criminally Derived Property, Aiding and Abetting and Causing an Act to Be Done, in violation of Title 18, United States Code, §§ 1957 and 2).**

### FORFEITURE ALLEGATION AS TO COUNTS ONE THROUGH SEVEN

1.      Upon conviction of any of the offenses alleged in Count One through Count Four of this Indictment, the defendants shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to these offenses, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).  The United States will also seek a forfeiture money judgment against the defendants equal to the value of any property, real or personal, which constitutes or is derived from proceeds traceable to these offenses.

2.      Upon conviction of any of the offenses alleged in Count Five through Count Seven of this Indictment, the defendants shall forfeit to the United States any property, real or personal, involved in the offense, or traceable to such property, pursuant to 18 U.S.C. § 982(a)(1).  The United States will also seek a forfeiture money judgment against the defendants equal to the value of any property, real or personal, involved in the offense, or  traceable to such property.

3.      If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendants:

      a.        cannot be located upon the exercise of due diligence;

      b.        has been transferred or sold to, or deposited with, a third party;

      c.        has been placed beyond the jurisdiction of the Court;

      d.        has been substantially diminished in value; or

      e.        has been commingled with other property that cannot be divided without

difficulty;

the defendants shall forfeit to the United States any other property of the defendants, up to the

value of the property described above, pursuant to 21 U.S.C. § 853(p) and 18 U.S.C. § 982(b)(1).

**(Criminal Forfeiture, pursuant to Title 18, United States Code,
§§ 981(a)(1)(C), 982(a)(1), and 982(b)(1);
Title 28, United States Code, § 2461(c);
and Title 21, United States Code, § 853(p)).**

A TRUE BILL

FOREPERSON.

*Jessie K. Fu*

ATTORNEY FOR THE UNITED STATES IN
AND FOR THE DISTRICT OF COLUMBIA

13